DORSEY & WHITNEY LLP
Bruce R. Ewing (BE-0724)
Elizabeth Rozon Baksh (EB-5863)
Fara S. Sunderji (FS-1208)
51 West 52nd Street
New York, New York 10019
(212) 415-9200

Attorneys for Plaintiff
World Trade Centers Association, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WORLD TRADE CENTERS                      :
ASSOCIATION, INC.,                       :
                                         :   15 Civ.
               Plaintiff,                :
                                         :
       - against -                       :
                                         :   **COMPLAINT**
THE PORT AUTHORITY OF NEW YORK           :
AND NEW JERSEY,                          :
                                         :
               Defendant.                :
-----------------------------------------------------------X

Plaintiff World Trade Centers Association, Inc. ("WTCA" or "Plaintiff"), by its attorneys, Dorsey & Whitney LLP, for its Complaint against defendant The Port Authority of New York and New Jersey (the "Port Authority" or "Defendant") alleges as follows:

### Introduction

1.   WTCA is a non-profit trade association located in New York, New York, founded in 1970 to promote international business relationships and encourage participation in world trade. WTCA now has more than 320 members worldwide, including the Port Authority. WTCA is the owner of the trademark WORLD TRADE CENTER®, acquired through its own use and

also by assignment from the Port Authority in 1986, and registered in its name with the U.S. Patent & Trademark Office (the "PTO") in 1987.

2. For approximately thirty years, WTCA has licensed the Port Authority on a royalty-free basis to use the WORLD TRADE CENTER® trademark specifically in connection with the physical building complex known by that name and located in lower Manhattan – both the complex destroyed in the tragic events of September 11, 2001 and the buildings that were re-built and subsequently opened. The Port Authority has repeatedly affirmed in writing the WTCA's ownership of the WORLD TRADE CENTER® mark and the Port Authority's status as a licensee. For many years, WTCA and the Port Authority cooperated with each other regarding the commercial use and enforcement of the WORLD TRADE CENTER® trademark.

3. However, the Port Authority has recently disputed WTCA's ownership of its mark, tried to use its vastly larger size and resources to intimidate WTCA, asserted that it can use the WORLD TRADE CENTER® trademark in connection with merchandise on a global basis without WTCA's authorization or any quality-control oversight from WTCA, and otherwise claimed that it can disregard WTCA's trademark rights.

4. Recently, without authorization from WTCA, the Port Authority began using a new trademark and logo for its One World Observatory that incorporates WTCA's WORLD TRADE CENTER® trademark, as part of a deliberate effort to endow the Port Authority's new mark with the goodwill inherent in WTCA's WORLD TRADE CENTER® mark. The Port Authority has also, again without authorization from WTCA, been using WTCA's WORLD TRADE CENTER® mark on merchandise sold at the observatory, and advised WTCA of its plans to sell goods bearing WTCA's WORLD TRADE CENTER® trademark throughout the United States and worldwide. With respect to that plan, the Port Authority has advised WTCA

2

that WTCA has no ability to object to the plan, nor the use of the WORLD TRADE CENTER® trademark worldwide in connection with goods, or to have any right to oversee the quality of those goods sold under its mark.

5. Finally, on June 24, 2015, the Port Authority made filings with the PTO that have blocked, at least temporarily, applications WTCA recently filed to register the service marks WORLD TRADE CENTERS ASSOCIATION and WTCA for association services, both of which WTCA has used for decades.

6. WTCA has attempted to maintain its formerly harmonious relationship with the Port Authority, but Defendant's present course of action and disregard of agreed-upon licensing terms and conditions has made that impossible. In order to halt Defendant's wrongful conduct, WTCA has had to commence this action, whose sole purpose is to protect its trademark rights. WTCA does not seek an award of monetary damages or profits earned to date from the Port Authority's wrongful activities. Nor does WTCA seek to prohibit the Port Authority from using the WORLD TRADE CENTER® trademark as the name of the building complex located in lower Manhattan. But WTCA submits that the Court should hold the Port Authority to its obligations imposed by law and by contract, and prevent further misuse of WTCA's WORLD TRADE CENTER® mark in connection with goods.

### Parties, Jurisdiction and Venue

7. Plaintiff WTCA is a non-profit trade association incorporated in Delaware and located in New York, New York.

8. Upon information and belief, the Port Authority is a body corporate and politic created by a compact between the States of New York and New Jersey, located in New York, New York.

9. This is a civil action arising out of Defendant's infringement of a federally registered trademark owned and used by WTCA, in violation of §§ 32(1) and 43(a) of the U.S. Trademark Act of 1946, *as amended* (the "Lanham Act"), 15 U.S.C. §§ 1114(1), 1125(a), violations of New York State common law, and breach of contract.

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338.

11. Upon information and belief, this Court has personal jurisdiction over Defendant pursuant to CPLR 301 and 302 by virtue of its physical location within this State and this District, its commission of tortious conduct as described herein in the State of New York and this District, and its transaction of business within the State of New York and this District. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c).

### WTCA and its WORLD TRADE CENTER® Trademark

12. WTCA was formed in approximately 1969 by executives of the Port Authority and two other trade promotion facilities located in Tokyo, Japan and Houston, Texas that were then using the WORLD TRADE CENTER® trademark in connection with trade promotion services. The organization was founded to serve members located around the world with an interest in promoting global trade and to establish a network of commonly licensed facilities under the WORLD TRADE CENTER® trademark.

13. WTCA had used the WORLD TRADE CENTER® trademark in connection with its trade association services since the 1960s through 1986. At the same time, the Port Authority was then using the WORLD TRADE CENTER® mark to designate the building complex located in lower Manhattan whose predominant feature was the "Twin Towers." In approximately 1986, the Port Authority and WTCA began to discuss how to allocate ownership

of that trademark between them, and who would assume the financial and legal burden of initiating enforcement actions to protect the trademark against third-party infringers.

14. After a series of discussions, the Port Authority decided to assign the WORLD TRADE CENTER® trademark, as well as certain registrations the Port Authority had obtained for that mark in New York State and Argentina, to WTCA in February 1986. A copy of the assignment memorializing that transfer is attached as Exhibit 1 (the "1986 Assignment"). As a result of that transfer, WTCA acquired both the right and the obligation to register, protect and enforce the WORLD TRADE CENTER® trademark around the world.

15. Almost simultaneously, on March 6, 1986, WTCA and the Port Authority entered into a license agreement attached as Exhibit 2 (the "1986 License Agreement") pursuant to which WTCA granted the Port Authority a non-exclusive, royalty-free license to use the WORLD TRADE CENTER® mark specifically in connection with services aimed at fostering world trade. In the 1986 License Agreement, the Port Authority further agreed in paragraph 2 that it would not use the WORLD TRADE CENTER® mark as a trademark for anything other than fostering world trade, absent written permission from WTCA, and that all of the Port Authority's use of that mark would inure to WTCA's benefit in the form of goodwill. *Id.*, ¶ 2.

16. Thereafter, since 1986, WTCA has expended substantial sums registering the WORLD TRADE CENTER® trademark around the world and protecting that mark against infringement, including through enforcement actions that have taken place in the U.S. and overseas. WTCA licenses the WORLD TRADE CENTER® trademark to association members located in the U.S. and many countries, and licensed WORLD TRADE CENTER® facilities operate in U.S. cities like Boston, Baltimore, Miami, Long Beach, Los Angeles, Seattle, Savannah and, of course, New York. As a result of the decades of use by WTCA and its

licensees of its WORLD TRADE CENTER® trademark, both consumers and the trade identify that mark with WTCA, its association services, and the licensed WORLD TRADE CENTER® facilities. The WORLD TRADE CENTER® trademark therefore symbolizes the goodwill embodied in the services offered by WTCA and its members and represents a valuable asset of WTCA.

17. WTCA obtained a registration for the trademark WORLD TRADE CENTER® from the PTO on December 15, 1987, U.S. Reg. No. 1,469,489, covering "Association services, namely fostering and promoting world trade and international business relationships." On January 26, 1993, WTCA also obtained from the PTO a registration for the trademark WTC®, U.S. Reg. No. 1,749,086, covering the same services. These registrations are valid and subsisting, have been renewed by WTCA, and are incontestable under 15 U.S.C. § 1065.

18. Also since 1986, WTCA's stewardship of the WORLD TRADE CENTER® trademark has been repeatedly recognized and affirmed by the Port Authority at various points over that nearly three-decade period, with the involvement and approval of multiple sets of Port Authority managers and directors.

19. On November 13, 1995, for example, WTCA and the Port Authority reaffirmed the validity of the 1986 Assignment, through the execution of a confirmatory assignment that is attached as Exhibit 3.

20. In July 2001, WTCA entered into a series of trademark license agreements with subsidiaries of Silverstein Properties and Westfield Corporation, which were then operating the facilities at the New York WORLD TRADE CENTER® complex, to use both the WORLD TRADE CENTER® and WTC® trademarks specifically in connection with various buildings and retail establishments located there. Following the destruction of the complex in September

2001, the ownership and operational structure of the New York WORLD TRADE CENTER® complex changed, and new license agreements were entered into in 2006 covering the complex that was then in the planning stage and that has since been constructed.

21. Specifically, in November 2006, WTCA entered into various Amended and Restated Trademark License Agreements with both affiliates of Silverstein Properties and, in two instances, with wholly owned and controlled subsidiaries of the Port Authority, to use the WORLD TRADE CENTER® and WTC® trademarks on a royalty-free basis in connection with the new buildings to be built on the site of the New York WORLD TRADE CENTER® complex (the "2006 License Agreements"). Copies of the two 2006 License Agreements entered into by WTCA with wholly owned and controlled subsidiaries of the Port Authority are attached as Exhibits 4 and 5. These two 2006 License Agreements cover the property now known as 1 World Trade Center and retail facilities operated at the rebuilt New York WORLD TRADE CENTER® complex, respectively.

22. These two 2006 License Agreements were executed by the Port Authority on behalf of its wholly owned and controlled subsidiaries and were negotiated by WTCA with the Port Authority, which at all times acted as the agent of those subsidiaries. Further, at all times during the negotiations concerning the 2006 License Agreements, the Port Authority itself manifested an intent to be bound by those Agreements.

23. The 2006 License Agreements recognized that the WTCA is the exclusive owner of the WORLD TRADE CENTER® and WTC® trademarks, and that the use of such marks by the Port Authority could only occur pursuant to a license from the WTCA.

24. For example, in Section II(A)(1) of each of the 2006 License Agreements, the Port Authority-controlled subsidiaries that were parties thereto and designated as "Licensees"

agreed that "all right, title and interest in and to all of the Licensed Property [defined as including the WORLD TRADE CENTER® and WTC® trademarks in Section I(A)(7), (11) and (19)] and all goodwill of the business symbolized by the Marks is and shall at all times be owned solely and exclusively by Licensor [WTCA], its successors and assigns and that nothing in this Agreement shall give Licensee any right, title, or interest in any of the Licensed Property. . . . In consequence of Licensor's ownership of the Licensed Property and said goodwill, Licensee shall not initiate or undertake any acts inconsistent with such ownership." The 2006 License Agreements granted the "Licensees" the royalty-free right to use the WORLD TRADE CENTER® and WTC® marks specifically in connection with the planned Manhattan complex of buildings that has now been constructed, including the building now known as 1 World Trade Center. In Section II(C)(1) of the 2006 License Agreements, all rights not expressly granted to the "Licensees" were reserved by WTCA.

25. In addition, in paragraph II(B)(2) of the 2006 License Agreements, the Port Authority-controlled subsidiary Licensees agreed that they would "not affix or purport to authorize the affixation of the Marks or any of them to any goods for commercial distribution . . . unless and until Licensee has submitted a specimen of such goods to Licensor in advance of its use for Licensor's written consent, and Licensor has given such written consent . . . ."

26. More recently, as of May 4, 2011, the Port Authority's then Executive Director confirmed the validity of the 2006 License Agreements when he invoked such Agreements in assigning to a new Port Authority-controlled affiliate the rights granted by WTCA in the 2006 License Agreement covering the property now known as 1 World Trade Center (Exh. 4). A copy of this notice of assignment is attached as Exhibit 6, and, in it, the then-Executive Director of the Port Authority confirmed that both the assignor and assignee of the 2006 License Agreement

8

covering the property now known as 1 World Trade Center were wholly owned by the Port Authority, and that the assignments were necessitated by "a corporate restructuring within the Port Authority with respect to 1 World Trade Center."

**The Port Authority's Violations of WTCA's Legal and Contractual Rights**

27. Notwithstanding the many decades over which the Port Authority has acknowledged WTCA's ownership of the WORLD TRADE CENTER® and WTC® trademarks and its status as a licensee, it has engaged in actions inconsistent with WTCA's status as the owner of such mark, thereby violating WTCA's legal and contractual rights.

28. Recently, WTCA learned that the Port Authority has decided to use the designation ONE WORLD OBSERVATORY in a logo design format to designate the observatory located at the top of the building known as 1 World Trade Center, the tallest building at the complex now located in lower Manhattan. Use of the ONE WORLD OBSERVATORY designation by itself is not inconsistent with the Port Authority's obligations as a licensee, but what is violative of WTCA's legal and contractual rights is the unauthorized combination of WTCA's WORLD TRADE CENTER® trademark with the ONE WORLD OBSERVATORY designation to create a hybrid logo that is plainly designed to use WTCA's goodwill to boost the new logo that the Port Authority has decided it wants to use. A copy of this unauthorized logo into which WTCA's WORLD TRADE CENTER® trademark has been engrafted is attached as Exhibit 7. Absent the consent of WTCA, the Port Authority cannot use the WORLD TRADE CENTER® trademark in this manner, either under the Lanham Act or the 1986 and 2006 License Agreements.

29. In addition, the 1986 and 2006 License Agreements state very plainly that, absent WTCA's written permission, the Port Authority cannot use the WORLD TRADE CENTER® or

WTC® trademarks in connection with goods or anything other than the specified licensed services of fostering world trade. Exh. 2, ¶ 1; Exh. 4, ¶ 2(B)(2); Exh. 5, ¶ 2(B)(2). Notwithstanding this limited license, the Port Authority has begun selling merchandise upon which the WORLD TRADE CENTER® trademark appears at the observatory atop the building known as 1 World Trade Center, without asking WTCA for permission, or even disclosing that such merchandise is already on sale. Examples of the unauthorized use of the WORLD TRADE CENTER® trademark in connection with merchandise are attached collectively as Exhibit 8. Without WTCA's authorization, the Port Authority cannot use WTCA's mark on any merchandise, and such use is a violation of both the Lanham Act and the 1986 and 2006 License Agreements.

30. Compounding the violations of WTCA's trademark and contractual rights, the Port Authority has advised WTCA that it plans to use the WORLD TRADE CENTER® and/or WTC® trademarks outside of the lower Manhattan complex and on a global basis outside of the U.S. in connection with merchandise without WTCA's authorization or permission, with the aim of earning tens of millions of dollars annually. This geographic scope of use is plainly not permitted under the 1986 License Agreement, the 2006 License Agreements or under U.S. law, but the Port Authority has simply decided unilaterally that it is free to disregard its legal and contractual obligations.

31. And, as if this were not enough, on June 24, 2015, the Port Authority filed with the PTO requests for extensions of time to oppose two recent WTCA trademark applications for the marks WTCA and WORLD TRADE CENTERS ASSOCIATION, App. Ser. Nos. 86336589 and 86336617, both covering "Association services, namely fostering and promoting international business and trade relationships." These filings, based on the bogus assertion that

WTCA and the Port Authority have been engaged in settlement negotiations over these particular applications, have at least delayed WTCA's two applications from proceeding to registration and could only be made under U.S. law if the Port Authority had a basis to believe that it has an interest that would be damaged by the issuance of registrations based on these applications. By claiming damage to a legal interest arising from the registration of the WTCA and WORLD TRADE CENTERS ASSOCIATION marks, the Port Authority is asserting rights in such marks that it is contractually barred as a licensee from claiming under the 1986 and 2006 License Agreements.

32. The Port Authority, in common with the rest of the trade, is well aware of the fact that the WORLD TRADE CENTER® and WTC® trademarks are owned by WTCA, and of the goodwill represented and symbolized thereby. Notwithstanding said awareness, and in fact by reason of same, the Port Authority has combined WTCA's mark with another mark owned by the Port Authority, used the WORLD TRADE CENTER® trademark with merchandise without WTCA's authorization, and developed a national and global plan to use the WORLD TRADE CENTER® and WTC® trademarks around the world, without authorization from WTCA.

33. Such misconduct by the Port Authority is intended to, and is likely to, cause confusion, mistake or deception of the trade and public and to cause them to believe that the Port Authority's goods and observatory services are authorized, sponsored or approved by WTCA or are otherwise affiliated or connected with WTCA or the services it offers.

34. The Port Authority's activities have caused and will continue to cause irreparable harm to WTCA and to the substantial goodwill embodied in the WORLD TRADE CENTER® and WTC® trademarks, and said acts will continue unless restrained by this Court.

35. WTCA has no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

### Trademark Infringement – Section 32(1) of the Lanham Act

36. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 35 hereof as if fully set forth herein.

37. Defendant's misconduct constitutes trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114(1).

## SECOND CLAIM FOR RELIEF

### Unfair Competition and Use of False Designations of Origin – Section 43(a)(1)(A) of the Lanham Act

38. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 37 hereof as if fully set forth herein.

39. Defendant's misconduct constitutes unfair competition and the use of false designations of origin and false descriptions and representations in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

## THIRD CLAIM FOR RELIEF

### Common Law Trademark Infringement

40. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 39 hereof as if fully set forth herein.

41. Defendant's conduct constitutes trademark infringement in violation of New York common law.

## FOURTH CLAIM FOR RELIEF

### Common Law Unfair Competition

42. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 41 hereof as if fully set forth herein.

43. Defendant's conduct constitutes trademark infringement in violation of New York common law.

## FIFTH CLAIM FOR RELIEF

### Breach of Contract – 1986 License Agreement

44. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 43 hereof as if fully set forth herein.

45. WTCA and the Port Authority are bound by the 1986 License Agreement, which is a valid and legally binding contract.

46. WTCA has performed its obligations under the 1986 License Agreement.

47. The Port Authority has breached its obligations under the 1986 License Agreement as described herein.

48. As a consequence of the Port Authority's breach, WTCA has sustained damages that are difficult to quantify and/or inadequate to compensate WTCA for the harm suffered because of the uniqueness of the WORLD TRADE CENTER® and WTC® trademarks, such that WTCA is entitled to the remedy of specific performance of all of the Port Authority's contractual obligations embodied in the 1986 License Agreement, and other equitable relief.

## SIXTH CLAIM FOR RELIEF

### Breach of Contract – 2006 License Agreements

54. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 53 hereof as if fully set forth herein.

55. WTCA and the Port Authority are bound by the 2006 License Agreements attached as Exhibits 4 and 5, which are valid and legally binding contracts.

56. WTCA has performed its obligations under the 2006 License Agreements.

57. The Port Authority has breached its obligations under the 2006 License Agreements as described herein.

58. As a consequence of the Port Authority's breach, WTCA has sustained damages that are difficult to quantify and/or inadequate to compensate WTCA for the harm suffered because of the uniqueness of the WORLD TRADE CENTER® and WTC® trademarks, such that WTCA is entitled to the remedy of specific performance of all of the Port Authority's contractual obligations embodied in the 2006 License Agreements, and other equitable relief.

## SEVENTH CLAIM FOR RELIEF

### Declaratory Judgment – 28 U.S.C. § 2201 *et seq.*

59. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 58 hereof as if fully set forth herein.

60. There is an actual controversy between the parties as to whether the Port Authority is bound by the restrictions contained in the 1986 and 2006 License Agreements that prohibit the use of the WORLD TRADE CENTER® and WTC® trademarks in connection with goods without the consent of WTCA, and whether the Port Authority is free to sell goods under those trademarks in the U.S. and around the world without WTCA's authorization.

61. This controversy is of such immediacy and reality that WTCA is entitled to the entry of a declaratory judgment under 28 U.S.C. § 2201 confirming that the Port Authority is bound by the restrictions contained in the 1986 and 2006 License Agreements that prohibit the use of the WORLD TRADE CENTER® and WTC® trademarks in connection with goods without the consent of WTCA, and that the Port Authority is not free to sell goods under those trademarks in the U.S. and around the world without WTCA's authorization.

WHEREFORE, Plaintiff prays for a judgment:

1. Permanently enjoining and restraining Defendant, its officers, agents, affiliates, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with them, or any of them, from the continued use, without WTCA's written permission, of: (i) any trademarks, designations or logos that contain the words WORLD TRADE CENTER®, WTC®, or any variations thereof, in connection with goods; (ii) using any trademark, including but not limited to, the logo attached hereto as Exhibit 7, in connection with any goods or services, to the extent the WORLD TRADE CENTER® or WTC® marks are included therein or appears in close proximity thereto; or (iii) any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the minds of the trade or public or to deceive the trade or public into believing that Defendant's goods have been approved, authorized or sponsored by WTCA.

2. Permanently enjoining and restraining Defendant, its officers, agents, affiliates, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with them or any of them, from taking or continuing any actions inconsistent with WTCA's sole and exclusive ownership of the WORLD TRADE CENTER®, WTC®, WORLD TRADE CENTERS ASSOCIATION and WTCA marks.

3. Permanently enjoining and restraining Defendant, its officers, agents, affiliates, servants, employees, attorneys, successors or assigns, and all persons or entities acting in concert or participation with them or any of them, from breaching the 1986 or 2006 License Agreements, and directing them to specifically perform their obligations under such contracts.

4. Declaring that Defendant is bound by the restrictions contained in the 1986 and 2006 License Agreements that prohibit the use of the WORLD TRADE CENTER® and WTC® trademarks in connection with goods without the consent of WTCA, and that Defendant is not free to sell goods under those trademarks in the U.S. and around the world without WTCA's authorization.

5. Directing Defendant to file with the Court and serve on counsel for Plaintiff, within thirty days after entry of any injunction issued by the Court in this action, a sworn written statement as provided in 15 U.S.C. § 1116.

6. Awarding Plaintiff its reasonable attorneys' fees, taxable costs and disbursements of this action, pursuant to 15 U.S.C. § 1117.

7. Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
September 18, 2015

DORSEY & WHITNEY LLP

By: _____
Bruce R. Ewing (BE-0724)
Elizabeth Rozon Baksh (EB-5863)
Fara Sunderji (FS-1208)
51 West 52nd Street
New York, New York 10019
(212) 415-9200

Attorneys for Plaintiff
World Trade Centers Association, Inc.