```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WORLD TRADE CENTERS ASSOCIATION,
INC.,

                Plaintiff,

        -v-                                              No. 15 CV 7411-LTS

THE PORT AUTHORITY OF NEW YORK
AND NEW JERSEY,

                Defendant.

-------------------------------------------------------x
```

## MEMORANDUM OPINION AND ORDER

Plaintiff, World Trade Centers Association ("WTCA"), brings this action against the Port Authority of New York and New Jersey (the "Port Authority" or "Defendant"), asserting claims for infringement of a federally registered trademark owned and used by WTCA in violation of the "Lanham Act" 15 U.S.C. §§ 1114(1), 1125(a), violations of New York State common law, and breach of contract. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

Defendant has filed a motion to dismiss Plaintiff's trademark infringement claim, arguing Plaintiff has failed to allege sufficiently that the infringing mark would likely cause confusion. The Court has reviewed thoroughly all of the parties' submissions and, for the reasons set forth below, Defendant's motion is denied.

## BACKGROUND

The following facts relevant to the disposition of the instant motion are drawn

from the Complaint and are assumed to be true for the purposes of this motion to dismiss. WTCA is a non-profit trade association and owner of the trademark "WORLD TRADE CENTER," which has been registered in its name with the U.S. Patent and Trademark Office ("PTO") since 1987. (See Compl. ¶ 1.) For approximately thirty years, WTCA has licensed the Port Authority to use the WORLD TRADE CENTER mark on a royalty-free basis in connection with the physical building complex by the same name located in lower Manhattan. (Id. ¶ 2.) In addition to its licensing agreement with the Port Authority, WTCA licenses WORLD TRADE CENTER facilities in seven other U.S. cities. (Id. ¶ 16.) WTCA has more than 320 members worldwide, including the Port Authority, which has repeatedly affirmed WTCA's ownership of the WORLD TRADE CENTER mark in writing. (Id. ¶¶ 1-2.) Based on decades of use by WTCA and its licensees, both consumers and the trade industry identify the WORLD TRADE CENTER mark with WTCA, its associations services, and the licensed WORLD TRADE CENTER facilities. (Id.)

Recently, without authorization from WTCA, the Port Authority allegedly began using a new trademark and logo ("ONE WORLD TRADE CENTER") that directly incorporates the WORLD TRADE CENTER mark for advertising of its One World Observatory and on merchandise sold at the observatory. (Id. ¶ 4.) Publicly available PTO records indicate WTCA had made filings stating its intention to use the WORLD TRADE CENTER mark in connection with the sale of its own merchandise since as early as 2011. (See Ewing Dec., Ex. 2, at 2-15.)[1]

---

[1] See Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) ("The court may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint. In particular, the court may take judicial notice of public records.") (internal quotation marks and citations omitted).

The Port Authority has knowingly and intentionally used the WORLD TRADE CENTER mark despite WTCA's objection and has advised that "WTCA has no ability to object" to the Port Authority's use of the mark worldwide in connection with goods or the right to oversee the quality of goods sold under the mark.  (See Compl. ¶ 4.)  WTCA asserts that the Port Authority cannot use the WORLD TRADE CENTER trademark in this manner absent WTCA's consent.  (Id.)

## DISCUSSION

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "must accept as true all of the factual allegations set out in the Plaintiff's complaint, draw inferences from those allegations in the light most favorable to the Plaintiff, and construe the complaint liberally."  Roth v. Jennings, 489 F.3d 499, 510 (2d Cir. 2007) (internal quotation marks and citation omitted).  To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 546 (2007).

To prevail on a claim of trademark infringement under the Lanham Act, a Plaintiff must show (1) ownership of a valid trademark, (2) that defendant copied, reproduced, or imitated the plaintiff's trademark without permission as part of the sale or distribution of goods or services and (3) that such use of the allegedly infringing mark would likely cause confusion as to affiliation, connection or association between the two marks.  Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009).  Defendant has moved to dismiss WTCA's trademark infringement claim on the ground that the Complaint fails to sufficiently allege a likelihood of confusion.

In the Second Circuit, the likelihood of confusion between two marks is assessed in light of the eight factors set forth in the so-called Polaroid test. See Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). These factors include: (1) the strength of plaintiff's mark, (2) the degree of similarity between the two marks, (3) the competitive proximity of the parties' products or services, (4) the existence of actual confusion, (5) the likelihood that plaintiff will "bridge the gap" between the two markets, (6) the defendant's good faith in adopting its mark, (7) the quality of the defendant's product, and (8) the sophistication of the purchasers. Id. However, "these factors are not always dispositive and other factors may be added or initial factors abandoned." Streetwise Maps, Inc. v. VanDam, Inc., 159 F.3d 739, 743 (2d Cir. 1998) (internal quotation marks and citations omitted).

The Port Authority argues that WTCA has failed to allege specific facts showing a likelihood of confusion and that any confusion is merely "speculative." (See Def. Mem. at 6-7.) The Port Authority further contends that WTCA has failed to allege facts specifically corresponding to each of the eight Polaroid factors. (See id. at 13-16.)

As a general rule, "the likelihood of confusion is a fact-intensive analysis that ordinarily does not lend itself to a motion to dismiss." Merck & Co., Inc. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d. 402, 412 (S.D.N.Y. 2006). It is well settled that, when applying the Polaroid factors to determine likelihood of confusion at a motion to dismiss stage, courts have not required all factors to be addressed in order to find adequate pleading of a likelihood of confusion. See, e.g., Ritani, LLC v. Aghjayan, 880 F. Supp. 2d 425, 446 (S.D.N.Y. 2012) (holding that likelihood of confusion was adequately pleaded based on defendant's intentional use of and association with plaintiff's "Ritani" mark in marketing materials); The Name LLC v. Arias, No. 10 CV 3212, 2010 WL 4642456, at *5 (S.D.N.Y. Nov. 16, 2010)

(holding that likelihood of confusion was adequately pleaded based defendant use of the "40/40" mark belonging to plaintiff on defendant's website, without evidence of actual confusion or competitive proximity between plaintiff's "sports bar" in America and defendants' "nightclub" in the Dominican Republic).  Rather, courts have consistently held that likelihood of consumer confusion was adequately pleaded based on facts relating to some, but fewer than all, of the Polaroid factors.  See id.

The Court finds that WTCA has sufficiently alleged facts supporting an inference of a likelihood of consumer confusion sufficient for the motion to dismiss stage pursuant to the Polaroid factors.  The Complaint alleges that the WORLD TRADE CENTER mark belongs to WTCA and has been registered in its name with the PTO since 1987.  (See Compl. ¶ 1.)  Given WTCA's stature as an international non-profit trade association with 320 members worldwide, its licensing agreement for facilities in seven other major U.S. cities and the worldwide name recognition of the WORLD TRADE CENTER mark both before and after the tragic events of September 11, 2001, WTCA has plausibly alleged that the WORLD TRADE CENTER mark is strong and well recognized.  (See id. ¶¶ 1-2, 16.)  The Port Authority's use of the WORLD TRADE CENTER mark in its ONE WORLD TRADE CENTER logo clearly incorporates WTCA's mark, supporting a reasonable inference of a high degree of similarity between the two marks.  (See Compl. Ex. 7-8.)

While WTCA and the Port Authority are not currently competitors, publicly available PTO records dating back to 2011 indicate that WTCA intends to use the WORLD TRADE CENTER mark in connection with the sale of merchandise bearing the mark, thus plausibly demonstrating that WTCA intends to "bridge the gap" over its current lack of competitive proximity with the Port Authority in the merchandising area.  (See Ewing Dec., Ex.

2, at 2-15.)  Indeed, the Port Authority's use of the trademark, which its subsidiaries licensed from WTCA (see Compl. ¶¶ 21-23), for merchandising tied to a building named pursuant to the license suggests that there is not much of a gap to bridge.  The Complaint also demonstrates that the Port Authority has knowingly and intentionally used the WORLD TRADE CENTER mark, despite WTCA's objection, after having repeatedly affirmed WTCA's ownership of the mark in writing throughout a thirty-year licensing relationship, thus giving rise to the reasonable inference that the Port Authority has acted in bad faith.  (See Compl. ¶¶ 2-4.)  Finally, given that the Port Authority intends to sell inexpensive promotional merchandise, likely as souvenirs for tourists and visitors to the newly constructed One World Observatory, the clear presence of the WORLD TRADE CENTER mark on these items, absent any association with the Port Authority, gives rise to the reasonable inference of an association with WTCA, which has been the legal owner of the mark since 1987.  (See Compl. Ex. 7-8.)  Taken as a whole, WTCA's pleading plausibly demonstrates a likelihood of consumer confusion.

The Port Authority also contends that its use of the WORLD TRADE CENTER mark is simply a geographic designation indicating the building of that name located at that address and cannot cause confusion because it is a "fair use" as a matter of law.  (See Def. Mem. at 10.)  This argument is unavailing on multiple grounds.  First, as an affirmative defense, fair use is a fact intensive inquiry that requires weighing of evidence outside the complaint and cannot generally be resolved on a motion to dismiss.  See Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2012) ("Because fair use is an affirmative defense, it often requires consideration of facts outside the complaint and is thus inappropriate to resolve on a motion to dismiss.")  Second, to assert a successful fair use defense to a trademark infringement claim, the defendant must prove that the use was made (1) other than as a mark, (2) in a descriptive sense

and (3) in good faith. Id. (internal citation omitted). Given the usage of the WORLD TRADE CENTER mark on advertising and merchandise as well as the Port Authority's alleged knowledge of and disregard for WTCA's ownership of the mark, the Port Authority's argument for fair use is unavailing at this stage of the litigation. The Court therefore denies the Port Authority's motion to dismiss WTCA's trademark infringement claim under the Lanham Act.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss WTCA's trademark infringement claim is denied. This Memorandum and Order resolves docket entry number 15. The final pretrial conference is rescheduled to July 21, 2017, at 11:00 a.m., and the related deadlines are modified accordingly. (See docket entry no. 43, ¶¶ 4-9.).

SO ORDERED.

Dated: New York, New York
December 15, 2016

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge