# EXHIBIT 56

AMENDED AND RESTATED TRADEMARK LICENSE AGREEMENT

THIS AMENDED AND RESTATED TRADEMARK LICENSE AGREEMENT (the "Agreement"), dated as of November 16, 2006 (the "Commencement Date") by and between WORLD TRADE CENTERS ASSOCIATION, INC., a Delaware corporation, having an office and place of business at 420 Lexington Avenue, Suite 518, New York, New York 10170 (hereinafter called the "Licensor"), and 1 WORLD TRADE CENTER LLC, a Delaware limited liability company having an office and place of business c/o The Port Authority of New York and New Jersey, 225 Park Avenue South, New York, New York 10003 (hereinafter called the "Licensee").

WITNESSETH, THAT:

WHEREAS, Licensor is an international organization committed to fostering the growth of global trade, having members throughout the world;

WHEREAS, the Port Authority (as hereinafter defined) and the Licensee entered into that certain Agreement of Lease dated as of July 16, 2001 with respect to a portion of that facility in New York City known as the World Trade Center (as the same has been amended prior to the date hereof, the "Original Lease");

WHEREAS, in connection with the execution of the Original Lease, the Licensor and the Licensee entered into that certain Trademark License Agreement dated as of July 24, 2001 (the "Original License");

WHEREAS, as a result of the terrorist attacks of September 11, 2001 all of the buildings, structures, and improvements then constituting the World Trade Center facility were destroyed;

WHEREAS, in view of the creation of a new facility in New York City which shall be known as the World Trade Center, the Port Authority and the Licensee are contemporaneously herewith entering into that certain: (i) Amended and Restated Agreement of Lease for a portion of that new facility in New York City known as the World Trade Center consisting of the T-1 Premises (as hereinafter defined), which lease shall amend and restate the Original Lease, for a term expiring on July 15, 2100 (the "Amended Lease"), and (ii) Agreement of Lease for a portion of that new facility in New York City known as the World Trade Center consisting of the T-5 Premises (as hereinafter defined) for a term expiring on July 15, 2100 (the "T-5 Lease");

WHEREAS, in connection with the execution of the Amended Lease and the T-5 Lease, Licensee desires to license from Licensor and Licensor desires to license to Licensee the right to use certain Marks (as hereinafter defined) owned by Licensor in connection with the operation of the Premises, on certain terms and conditions more specifically set forth herein; and

WHEREAS, simultaneously herewith, Licensor is entering into another license agreement with WTC Retail LLC, which license agreement is substantially in the form of this Agreement.

SSL-DOCS1 1723829v10





NOW, THEREFORE, in consideration of the covenants and mutual agreements of the parties hereto, Licensor and Licensee hereby covenant and agree as follows:

The Original License is hereby continued in full force and effect and amended, restated and superseded in its entirety as follows:

I. ARTICLE - DEFINITIONS

A. Certain Definitions - For all purposes of this Agreement, the following terms shall have the following meanings:

1. "Agreement" shall have the meaning provided in the Preamble.

2. "Amended Lease" shall have the meaning provided in the Recitals.

3. "Closing Date" shall mean the Commencement Date.

4. "Comparable Buildings" shall mean those buildings more particularly set forth on Exhibit A attached hereto.

5. "Commencement Date" shall have the meaning provided in the Preamble.

6. "License Term" shall have the meaning provided in Section III.A.

7. "Licensed Property" shall mean and be limited solely to the Marks and the Registrations (as defined below).

8. "License" shall have the meaning provided in Section II.B.

9. "Licensee" shall have the meaning provided in the Preamble.

10. "Licensor" shall have the meaning provided in the Preamble.

11. "Marks" shall mean the terms and/or designations (including word marks, logo marks, and names, as appropriate) "WORLD TRADE CENTER", "WTC", and the Map Design Logo (as depicted in Exhibit B), and any and all other terms and/or designations owned by Licensor at the Commencement Date or thereafter (as the case may be) and made hereafter a part of this Agreement by adding same, pursuant to written agreement between the parties, to the terms and/or designations initially licensed for use.

12. "Non-Stylized Form" shall mean any representation solely in upper case letters, or with initially capitalized letters, in any standard typeface or font (including a cursive typeface or font).

13. "Notice" shall have the meaning provided in Section VII.A.

14. "Original Lease" shall have the meaning provided in the Recitals.

15. "Original License" shall have the meaning provided in the Recitals.

16. "Person" shall mean and include an individual, corporation, partnership, limited liability company, joint venture, estate, trust, unincorporated association, any federal, state, county or municipal government or any bureau, department, authority or agency thereof, and the Port Authority.

17. "Port Authority" shall mean The Port Authority of New York and New Jersey, a body corporate and politic, created by compact between the States of New York and New Jersey with the consent of the Congress of the United States.

18. "Premises" shall mean the T-1 Premises and the T-5 Premises collectively.

19. "Registration(s)" shall mean any and all registrations of any of the Marks and applications therefor owned by Licensor which may subsist or be pending at any time during the License Term.

20. "T-1 Premises" shall have the same meaning as "Premises" has in the Amended Lease. The parties acknowledge that the T-1 Premises consists of that portion of the World Trade Center to be known and designated as the Freedom Tower.

21. "T-5 Lease" shall have the meaning provided in the Recitals.

22. "T-5 Premises" shall have the same meaning as "Premises" has in the T-5 Lease. The parties acknowledge that the T-5 Premises consists of that portion of the World Trade Center to be known and designated as Five World Trade Center or Tower T-5.

II. ARTICLE - LICENSE

A. Ownership of Licensed Property

1. Licensee acknowledges and agrees that all right, title and interest in and to all of the Licensed Property and all goodwill of the business symbolized by the Marks is and shall at all times be owned solely and exclusively by Licensor, its successors and assigns and that nothing in this Agreement shall give Licensee any right, title, or interest in any of the Licensed Property, other than the limited, non-exclusive right to use the Marks for the License Term, subject to the terms and conditions of this Agreement. In consequence of Licensor's ownership of the Licensed Property and said goodwill, Licensee shall not initiate or undertake any acts inconsistent with such ownership.

2. Licensee further acknowledges and agrees that all use of the Marks by Licensee shall be on behalf of and shall inure solely and exclusively to the benefit of Licensor insofar as the ownership of and rights in and to the Licensed Property, and the goodwill of the business symbolized thereby are concerned.

B. Grant of Non-Exclusive License. Subject to the terms and conditions of this Agreement, Licensor hereby grants to Licensee and Licensee hereby accepts a royalty-free, fully paid-up, worldwide non-exclusive license ("License") to use the Marks (i) in connection with the Premises, including but not limited to operating, promoting, advertising, identifying (including but not limited to in directories and on signage) and maintaining the Premises under the Marks,

and (ii) in the corporate name "1 World Trade Center LLC," it being understood that, subject to the license rights of the Port Authority and those in privity with it under the Marks, Licensor shall not be granting licenses to use the Marks to denote properties in New York City other than (i) the Premises or (ii) other parts of the facility in New York City currently known as the World Trade Center.

Licensee shall:

(1) use the marks "WORLD TRADE CENTER" and "WTC" only in Non-Stylized Form or in such stylized form as may be approved in writing by Licensor or as was used by Licensor or Licensee in connection with the Premises prior to or as of the Commencement Date (as the case may be); or as hereafter agreed upon in writing by the parties;

(2) not affix or purport to authorize the affixation of the Marks or any of them to any goods for commercial distribution (or for non-commercial distribution in more than limited quantities), unless and until Licensee has submitted a specimen of such goods to Licensor in advance of its use for Licensor's written consent, and Licensor has given such written consent, not to be unreasonably withheld or delayed, provided that once Licensor has approved a type of good, no specimen thereof will need to be resubmitted unless and until Licensee makes a material modification thereto (and further provided that Licensee may affix the marks "WORLD TRADE CENTER" and "WTC" in the Non-Stylized Form to brochures and all printed or electronic materials relating to the normal business operation, promotion, or advertising of any portion of the Premises);

(3) not use the Marks in connection with the advertising, sale or promotion of any facility other than the Premises, it being understood, however, that Licensee may use the Marks in a factually accurate manner in such advertising, sale or promotion to denote the Premises even in connection with materials that include references to other properties;

(4) not use the Marks or any colorable imitation thereof as a mark or in any other way (other than fair use as understood under the Lanham Act) subsequent to the License Term;

(5) not use the Marks in combination or conjunction with any other term or device without securing the prior written consent of Licensor, which consent shall not be unreasonably withheld; provided, however, that Licensor expressly consents herein to use of the words or Arabic numbers "1," "One," "T-1," and "Freedom Tower" in connection with words WORLD TRADE CENTER or

WTC relating to the T-1 Premises, and "5", "T-5," and "Five" in connection with the words WORLD TRADE CENTER or WTC relating to the T-5 Premises; and

(6) not use any of the Marks in a manner that will genericize, dilute or otherwise damage, any of the Marks and/or the goodwill associated therewith.

C. Reservation of Rights Not Licensed

1. The rights granted to Licensee in the Licensed Property are limited in time and substantive scope solely to the express terms of the non-exclusive License granted under this Agreement. All rights not expressly licensed pursuant to Section II.B above are expressly reserved to Licensor. Licensee shall use the Licensed Property only insofar as permitted under the License (including without limitation using the Licensed Property beyond the express terms of the license grant in Section II.B only with the written pre-approval of Licensor).

2. Without limiting the generality of Section II.C.1 above, nothing in this Agreement shall be construed to authorize Licensee to use or purport to authorize use of any of the Licensed Property in connection with any facility, business, or enterprise, other than the Premises.

D. Enforcement of Licensed Rights. As between Licensor and Licensee, Licensor has and shall continue to have for the License Term the exclusive initial right and option (but not the obligation) to initiate and control any litigation or other proceeding or action taken involving any of the Marks (whether or not in combination with one or more other words or devices) or any colorable imitation thereof at the sole discretion of Licensor. Unless such enforcement is against Licensee, the expenses of any such enforcement, including proceedings relating thereto, shall be paid by Licensor. Any and all recoveries from any lawsuit, other proceeding or action, or settlement shall go solely to Licensor; provided, however, that if (i) Licensor initiates such litigation, other proceeding or action at the written request of Licensee, Licensee shall pay Licensor's reasonable costs, attorneys' fees and other expenses in connection with such litigation, other proceeding or action, in accordance with typical cost, fee and expense levels for litigation of this type by firms of national reputation in New York City, U.S.A., or (ii) Licensor decides not to initiate such litigation, other proceeding or action, Licensee shall have the right, as between Licensor and Licensee, at Licensee's own cost and expense to initiate such litigation, other proceeding or action, provided that Licensee (x) obtains Licensor's prior written consent, not to be unreasonably withheld, and (y) consults with Licensor throughout regarding such litigation, proceeding, or action. In connection with subpart (i) above, Licensor shall reimburse Licensee for such costs, attorneys' fees and expenses paid by it to Licensor to the extent those items are covered by any monetary recovery received by Licensor as a result of the litigation, other proceeding or action, or settlement. As between Licensor and Licensee, Licensor shall have the sole and exclusive right of approval in its sole discretion to settle, compromise, or otherwise deal with any dispute (other than one with Licensee) relating to any of the Marks; except for those disputes undertaken by Licensee pursuant to subpart (ii) above concerning which, as between Licensor and Licensee, Licensee shall have such right of approval in consultation with Licensor. Licensee agrees to notify Licensor promptly in writing of any actual or suspected

infringement, dilution, unfair competition, or any form of damage or probable damage relating to the Marks by a third party which may come to its attention and Licensee further agrees upon the request of Licensor to assist Licensor, at the sole expense of Licensor, in enforcing any of the Marks against such party.

III. ARTICLE - TERM OF AGREEMENT

A. Term. The term of this Agreement (the "License Term") shall be for the later of the term of the letting as set forth in either: (i) Section 3 of the Amended Lease, which expires on July 15, 2100, and for any extension of such term in accordance with the terms of the lease such that said expiration is commensurately deferred, or (ii) Section 3 of the T-5 Lease, which expires on July 15, 2100, and for any extension of such term in accordance with the terms of the lease such that said expiration is commensurately deferred; provided, however, that: (a) if the Amended Lease is terminated in accordance with its terms prior to either July 15, 2100 or the expiration of any extension of the Amended Lease term, as the case may be, then from the time of such termination and thereafter Licensee shall immediately cease any use of the words or Arabic numbers "1", "One", "T-1" or "Freedom Tower" in connection with the words WORLD TRADE CENTER or WTC, in accordance with the terms set forth in this Agreement; (b) if the T-5 Lease is terminated in accordance with its terms prior to either July 15, 2100 or the expiration of any extension of the T-5 Lease term, as the case may be, then from the time of such termination and thereafter Licensee shall immediately cease any use of the words or Arabic numbers "5", "T-5" or "Five" in connection with the words WORLD TRADE CENTER or WTC, in accordance with the terms set forth in this Agreement; or (c) if both the Amended Lease and the T-5 Lease are terminated in accordance with their respective terms prior to either July 15, 2100 or the expiration of any extensions to such license terms, then this Agreement shall be deemed to have expired simultaneously with the later of: (i) the termination of the Amended Lease term, or the expiration of any extension thereof; or (ii) the termination of the T-5 Lease term, or the expiration of any extension thereof; provided that Licensee shall in the event of a termination as referred to in this item (c), nonetheless also comply with items (a) and (b) as set forth above in this paragraph.

B. Material Breach. Subject to Section VI.A hereof, in the event of any material breach of any provision hereof on the part of Licensee which remains uncured sixty (60) calendar days after Notice of the alleged breach is received by Licensee, Licensor may bring an action in law or in equity with respect to such breach. Licensor's exclusive remedies with respect to a breach of any provision of this Agreement shall be monetary damages and injunctive relief against such continued violation. Any such breach by Licensee shall be deemed a partial breach of this Agreement, and Licensor may not terminate this Agreement for such partial breach.

C. Cessation of Use. Licensee agrees to cease, immediately upon expiration of this Agreement, production of new materials which bear any of the Marks or any colorable imitation thereof. Notwithstanding Section II.B(4), for all use of the Marks or any colorable imitation thereof (other than fair use as understood under the Lanham Act) by or on behalf of Licensee which cannot with reasonable efforts be ceased coincident with the end of the License Term, within one hundred and eighty (180) days of expiration of this Agreement all such use of the Marks or any colorable imitation by or on behalf of Licensee shall be ceased, including, without limitation, any and all display, publication, and broadcasting of any of the Marks or any

colorable imitation thereof or materials incorporating any of the Marks or any colorable imitation thereof.

IV. ARTICLE - QUALITY STANDARDS

A. Quality Standards. In addition to the other quality standards set forth herein, Licensor and Licensee agree that the quality of all services rendered under any of the Licensed Property shall be comparable in quality to the quality of services then prevailing in the Comparable Buildings, and all related advertising, promotional, and other materials or presentations displaying the Marks or any of them (including without limitation on-line or other electronic presentations) shall be comparable in quality to the advertising, promotional and other materials or presentations used in connection with the Comparable Buildings, and all of the foregoing shall conform in all respects to the obligations of Licensee under the then applicable provisions of the Lease Agreement. Licensee shall submit to Licensor, from time to time, upon request of Licensor, (i) samples sufficient to accurately show each of Licensee's uses of the Marks and (ii) detailed descriptions of any and all of the goods (subject to Section II.B.2) and services provided and activities conducted by Licensee in connection with the Marks.

B. Quality Maintenance

1. Licensee agrees:

(1) to permit reasonable inspection of the operation of the Premises, and uses of the Licensed Property, during normal business hours and at reasonable intervals on not less than three (3) business days' notice; and

(2) not to use or knowingly permit the use of the Premises or any portion thereof for any illegal purpose.

2. It is agreed that:

(1) Licensor shall maintain any United States trademark registrations for the Marks and shall pursue the prosecution of United States trademark applications for the Marks subsisting or pending on the Commencement Date; and

(2) Licensor shall file a United States application for registration of any of the Marks that may be added to the Licensed Property after the Commencement Date (but only insofar as such one or more of the added Marks is not already the subject of one or more United States registrations or applications for registration) pursuant to this Agreement and written amendments thereto between Licensor and Licensee; provided, however, that the party that proposes an addition as aforesaid to the Licensed Property shall bear the cost (including attorney fees) of filing each application occasioned by such addition, as well as prosecuting, defending (from opposition

or other challenge) and maintaining such application(s) and any registration(s) based thereon.

V. ARTICLE - INDEMNIFICATION

A. Indemnification by Licensee. Except for any damages due to (i) the gross negligence or willful misconduct of Licensor or (ii) any claim challenging Licensor's ownership and/or Licensor's use of the Marks, Licensee agrees to and shall indemnify, defend, and hold harmless Licensor, as well as Licensor's officers, directors, and employees, from and against any and all damages of any nature or kind whatsoever, including without limitation reasonable attorneys' fees, liability, awards, costs, judgments, orders or decrees based on or arising out of any claim, suit, threat, cause of action, demand or proceeding arising out of Licensee's material breach of the terms of this Agreement, or out of any services or goods (subject to Section II.B.2) provided or activity conducted by Licensee or any servant, agent, or employee thereof under, otherwise in connection with, or as a result of any of the Licensed Property.

B. Indemnification by Licensor. Except for any damages due to the gross negligence or willful misconduct of Licensee, Licensor agrees to and shall indemnify, defend and hold harmless Licensee, as well as Licensee's officers, directors, and employees from and against any and all damages of any nature or kind whatsoever, including without limitation reasonable attorneys' fees, liability, awards, costs, judgments, orders or decrees based on or arising out of any claim, suit, threat, cause of action, demand or proceeding arising out of Licensor's material breach of the terms of this Agreement.

VI. ARTICLE - EQUITABLE REMEDIES

A. Injunctive Relief. Licensee acknowledges that the Registrations, the Marks and the goodwill associated therewith constitute a valuable property interest of Licensor and that Licensor would suffer substantial, irreparable damage and would be without adequate remedy at law in the event of use of any of the Licensed Property by or on behalf of Licensee other than in conformance with the terms and conditions of this Agreement. Accordingly, notwithstanding any cure rights set forth herein on behalf of Licensee or other remedies available to Licensor at law, Licensor shall be entitled to immediate injunctive relief against any infringement of any of Licensor's rights in any of the Licensed Property or any unauthorized use of any of the Marks, or any other part of the Licensed Property, or any colorable imitation of any of the foregoing, by or on behalf of Licensee, or if at any time Licensee fails to fulfill any of its obligations under Articles II, III, and IV of this Agreement; provided, however, that the foregoing shall be without prejudice to Licensee's defending against the same on the basis that no such infringement, unauthorized use, or failure has occurred.

VII. ARTICLE - MISCELLANEOUS

A. Notices. Each notice, demand, request, consent, approval, or other communication required or permitted hereunder ("Notice") shall be in writing, with a copy to the Port Authority, and shall be deemed to have been duly given and received if and only if (i) personally delivered with proof of delivery thereof (any Notice so delivered being deemed to have been received at the time delivered), (ii) sent by overnight mail, postage prepaid (any

Notice so delivered being deemed to have been received at the time delivered), or (iii) transmitted by telecopier with confirmation of receipt (sender's confirmation of a successful transmission) (any Notice so sent being deemed to have been received on the date of transmission, if a business day, or the first succeeding business day, subsequent thereto), addressed to the respective parties as follows:

| | |
|---|---|
| if to Licensor: | World Trade Centers Association, Inc.<br>420 Lexington Avenue,<br>Suite 518<br>New York, NY 10170<br>Attention: Executive Vice President<br>Tel: (212) 432-2626<br>Fax: (212) 488-0064 |
| if to Licensee: | The Port Authority of New York and New Jersey<br>225 Park Avenue South,<br>14th Floor<br>New York, New York 10003<br>Attention: General Counsel<br>Tel: (212) 435-6910<br>Fax: (212) 435-6913 |

A party may designate by Notice in writing given to the other(s) in the manner herein specified a new or other address to which Notices shall thereafter be so given.

B. Construction and Application of Terms. This Agreement does not constitute Licensee as the agent or representative of Licensor for any purpose whatsoever. Neither a partnership nor any joint venture is hereby created. All designations of time herein contained shall refer to the time system then officially in effect in the City of New York. This Agreement may not be amended except by a document signed by Licensor and Licensee, and in the case of an amendment to the provision in Section VII.A concerning Notice to the Port Authority or to this Section VII.B or Section VII.E, by the Port Authority also. This Agreement shall not alter the Port Authority's license rights under the Marks.

C. Consents; Approvals. Any written request for consent or approval hereunder shall be deemed granted if the party receiving such request does not deny such request in writing within thirty (30) days following receipt of such request.

D. Disclaimer. Nothing in this Agreement shall be deemed to constitute a warranty or representation by Licensor that any of the Licensed Property is available for use, or that use of any of the Licensed Property does not infringe the rights of one or more others. LICENSOR MAKES NO WARRANTY, EXPRESS, IMPLIED, STATUTORY OR OTHERWISE, AND SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT, WITH RESPECT TO THE LICENSED PROPERTY.

E. Binding Effect; Successors and Assigns; Sublicensing; Survival. This Agreement shall be binding upon and inure to the benefit of Licensor's respective successors and assigns. Licensee may not assign, transfer, or convey (including by operation of law) this Agreement or sublicense the Marks or other Licensed Property to any Person without the prior written consent of Licensor; provided, however, that Licensee (and Licensee's permitted successors and assigns) shall have the right to assign this Agreement or sublicense the Marks and the other Licensed Property, in either case, in whole or in part, to any Person who succeeds to Licensee's interest as lessee of all or any portion of the Premises, provided that such assignee, sublicensee or successor agrees in writing to be bound by all of the terms and conditions of this Agreement. Licensee's obligations under Articles II and V, and Licensor's obligations under Article V, shall survive expiration of this Agreement or the License.

F. Applicable Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, United States of America.

G. Non-Waiver. The failure of either party to exercise any right, power, or option available to it under this Agreement, or to insist upon strict compliance with the terms hereof, shall not constitute a waiver of the terms and conditions of this Agreement with respect to any other or subsequent breach thereof, nor a waiver by a party hereto of its rights at any time thereafter to require exact and strict compliance with all the terms hereof. The rights or remedies hereunder are cumulative to any other rights or remedies which may be granted by law.

H. Entire Agreement; Duly Authorized. This Agreement represents the entire understanding and agreement between Licensor and Licensee with respect to the subject matter hereof, and supersedes all other negotiations, understandings and representations (if any) made by and between such parties.

I. Counterparts. This Agreement may be executed in several counterparts, each of which shall be an original, and all such counterparts taken together shall be deemed to constitute one and the same instrument.

**IN WITNESS WHEREOF,** Licensor and Licensee have hereunto set their hands and seals as of the day and year first above written.

**Licensor:**

WORLD TRADE CENTERS ASSOCIATION, INC.

By: [signature]
Name: Matthew Kleinknecht
Title: Vice President

**Licensee:**

1 WORLD TRADE CENTER LLC

By: The Port Authority of New York and New Jersey

By: ______________________
Name: ______________________
Its: ______________________

**IN WITNESS WHEREOF,** Licensor and Licensee have hereunto set their hands and seals as of the day and year first above written.

**Licensor:**

WORLD TRADE CENTERS ASSOCIATION, INC.

By: ____________________
Name: ____________________
Title: ____________________

**Licensee:**

1 WORLD TRADE CENTER LLC

By: The Port Authority of New York and New Jersey

By: [signature]
Name: Michael B. Francois
Its: Director of Development

EXHIBIT A

*Downtown Buildings*

- 7 World Trade Center
- One Liberty Plaza
- World Financial Center

*Midtown Buildings*

- One Bryant Park
- The new New York Times Building (8th Avenue between 40th and 41st Streets)

SSL-DOCS1 1723829v10

EXHIBIT B

WORLD TRADE CENTER, U.S. Reg. No. 1,469,489

WTC, U.S. Reg. No. 1,749,086

Map Design Logo Depiction, U.S. Reg. No. 1,011,720:



SSL-DOCS1 1723829v10